THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

KESHEL S. COATES,                    :
                                      :
     Plaintiff,                  :        Civil Action
                                      :        No. 5:09-cv-423 (CAR)
v.                                    :
                                      :
Dr. RON NATALE et al.,               :
                                      :
     Defendants.                 :
_____      :

ORDER ON MOTION TO DISMISS

In this case, which was removed to this Court from the Superior Court of Bibb

County, Plaintiff, proceeding *pro se*, brings various federal and Georgia state-law claims

against Defendants Central Georgia Technical College ("CGTC"); Dr. Ron Natale,

President of CGTC; Mr. Eddie Dixon, Vice President of Student Affairs at CGTC; and

Ms. Joni Johnson, an instructor at CGTC.   Plaintiff's claims arise out of her expulsion

from CGTC on or about September 6, 2007.   Defendants have moved to dismiss

Plaintiff's claims, and Plaintiff has moved to remand the claims back to state court.

Plaintiff has also filed a motion to strike various responses Defendants have filed.  Upon

review of the allegations in the Complaint, the Motions and responses thereto, and the

applicable law, the Court finds that Plaintiff's claims are due to be dismissed.

Accordingly, and for the reasons set forth below, Defendants' Motion to Dismiss [Doc.

1

4] is hereby **GRANTED**.  Without further discussion, the Court **DENIES** Plaintiff's

Motion to Strike [Doc. 21].  Defendants' various responses to the numerous documents

filed by Plaintiff are valid.

**Plaintiff's Motion to Amend Complaint**

Before the Court begins its analysis on Defendants' Motion to Dismiss, it must

address the second amended complaint Plaintiff filed on December 21, 2009, almost two

weeks after Defendants filed their Motion to Dismiss.  Because Plaintiff has already

amended her complaint once, see Doc. 1-2, she must have the Court's permission to

amend again.  See Fed. R. Civ. P. 15(a); see also Wayne v. Jarvis, 197 F.3d 1098, 1105

(11th Cir. 1999) (*pro se* litigants are not exempt from complying with relevant rules of

procedural and substantive law).  Thus, the Court construes Plaintiff's "Response to

Defendants to Amend [*sic*] Original & Amended Complaint" [Doc. 10] as a Motion to

Amend Complaint.  Because the proposed Amended Complaint would be futile,

Plaintiff's Motion is DENIED.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend

should be "freely given," except in the presence of "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [and] futility of amendment[.]"  McKinley v. Kaplan, 177 F.3d 1253, 1258

(11th Cir. 1999) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  With respect to futility, the law of this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  <u>Hall v. United Ins. Co. of America</u>, 367 F.3d 1263 (11th Cir. 2004).  "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail."  <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 822-23 (11th Cir., 1999).

After careful review of the Plaintiff's proffered amended complaint, the Court finds that the proposed amendments would be futile and thus, necessarily fail.  This second amended complaint is essentially redundant of the facts and claims Plaintiff presents in her original and first amended complaint, and does not change the Court's analysis that Plaintiff's constitutional civil rights and state-law tort claims are barred by the statute of limitations and that her remaining allegations must be dismissed for failure to state a claim for relief.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

In considering a motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  <u>Mills v. Foremost Ins. Co.</u>, 511 F.3d 1300, 1303 (11th Cir. 2008).  Plaintiff's allegations stem from her alleged unfair treatment and expulsion from CGTC.

3

Plaintiff attended CGTC in the summer of 2007, from July through early September.  At that time, Defendant Dr. Natale was the President of CGTC; Defendant Dr. Dixon was CGTC's Vice President of Student Affairs; and Defendant Johnson was a CGTC instructor.  Plaintiff's tuition was paid through the Workforce Investment Act ("WIA"), which provided approximately $6,000 per year for Plaintiff to enroll in a course of study lasting up to two years.

During the time Plaintiff was enrolled at CGTC, she filed three grievances against "a female professor," for "retaliation, public humiliation[,] and aggressive behavior[.]" (Compl. p. 3).  Although it is not entirely clear from Plaintiff's complaint whether all three grievances were against Defendant Johnson, the context of the complaint and the attached exhibits suggest that the grievances all concerned instructor Johnson.  Plaintiff's first grievance stemmed from her removal from class on August 1, 2007, for "requesting the professor to cease with verbal rebuke for incorrectly assembling an Ethernet cable for a test grade." (Id.).  In the second grievance, apparently submitted in late August, Plaintiff complained that Defendant Johnson engaged in "retaliation, public humiliation and verbal abuse during a remote online lecture that was heard [by] other students[.]" (Id.).  Plaintiff's third grievance, submitted on September 5, 2007, asserted that "the professor had targeted her for retaliation, verbal abuse, and unsolicited, aggressive, and bodily threatening behavior,"

and "consistently engaged in retaliation behaviors during class due to the grievance filed against her." (Id. at 3-4).

Plaintiff alleges that at the same time she delivered her third grievance to the Office of Student Affairs, the receptionist gave her a letter from Defendant Dixon informing her "that she was expelled from the college at that moment and that all ties from the college [were to be] cut[.]" (Id. at 4). Plaintiff alleges she was neither placed on probation nor suspended prior to her expulsion. The expulsion took place five days before her final exams.

Thereafter, Plaintiff "sought student recourse" and on September 14, 2007, mailed the President of the college, Defendant Dr. Natale, a request for a hearing. More than a month later on October 24, 2007, Plaintiff received Dr. Natale's response letter upholding the expulsion and stating that she "should no longer seek [her] educational endeavors at [CGTC]." (Id. at 5). Plaintiff alleges that Dr. Natale "denied [her] [the] right to answer the charges and ignored [her] request to have an administrative hearing at the campus level." (Id.). Plaintiff did not receive a hearing and did not pursue any additional avenues, including those available through the state court system, in seeking such a hearing prior to filing this lawsuit.

Plaintiff attached several documents to the amended complaint, including the three grievance letters Plaintiff filed against Defendant Johnson; the expulsion letter

from Defendant Dixon; Plaintiff's letter to Defendant Dr. Natale requesting a hearing;

Dr. Natale's response letter to Plaintiff upholding the expulsion and denying a hearing;

a copy of the Student Recourse Procedure; and Plaintiff's purported Enrollment

Agreement under the WIA.

The grievance letters detail Plaintiff's complaints about and problems with her

instructor, Defendant Johnson.  The expulsion letter from Defendant Dixon is dated

September 6, 2007.  The letter states that Dixon had received a second instructional

complaint expressing Plaintiff's "(1) Inappropriate conduct; (2) Refusal to adhere to

directives; and (3) Challenging [*sic*] instructional delivery." (Doc. 1-3 at 13).  In the

letter, Defendant Dixon then informs Plaintiff that

> [t]his behavior is completely unacceptable, and will not be tolerated as
> explained to you on August 8, 2007, before a decision was made to allow
> you to return to CIS 2321 under probationary conditions.   It was clearly
> explained to you what was expected of you as it related to the College's
> disciplinary policy.
>
> It is evident by your continued negative actions that the College is unable
> to satisfy your demands.  It is therefore the position of the College that
> you find another training facility to finish your desired program.
>
> Therefore, effective immediately, I am instructing the Registrar's Office,
> Admissions, Financial Aid and Instructional Services to terminate all
> relationships with you.

> Further, you are not allowed to re-enter this campus without official approval from my office.  Failure to adhere to this directive may result in legal action.

Id.

After receiving this letter, Plaintiff sought an administrative hearing pursuant to CGTC's Student Recourse Procedure.  (Id. at 24).  This procedure sets forth a four-step process by which CGTC students can obtain relief.  First, within five days after notification of the complained of action, the student must appeal in writing to the Vice President of Student Affairs.  The Vice President of Student Affairs must then respond within 30 days of the complaint.  Second, if the student is not satisfied with the Vice President's response, the student has ten days to request an administrative hearing. The policy states that "[w]ithin ten (10) days of receipt of the request for a hearing, the Vice President of Student Affairs will convene the Administrative Action Committee. The student will appear before the Committee and a decision will be rendered.  The student will be notified with[in] 24 hours of the decision."  (Id.).  Third, if the student is dissatisfied with the outcome of the administrative hearing, she may, within ten days, file an appeal with CGTC's President.  The President must respond to the appeal within ten days.  Finally, if the student still feels the matter is unresolved following the President's review, the student may appeal to the Local Board of Directors.  (Id.).

On September 14, 2007, eight days after she received the expulsion letter, Plaintiff wrote to CGTC's President, Defendant Natale, complaining of the expulsion and requesting an administrative hearing.  Id. at 7-10.  Over a month later, on October 19, 2007, Dr. Natale wrote Plaintiff that he was "denying [her] appeal for reinstatement." Id. at 11.  The letter also recounted to Plaintiff that she had

> received a letter from Dr. Dixon which explained that [CGTC] was terminating all relationships as a result of [her] inappropriate conduct, refusal to adhere to directives, and challenging instructional delivery. This action followed a probationary period during which [she was] to follow a prescribed behavior policy.

Id.

On October 19, 2009, exactly two years after she received Dr. Natale's letter denying her request for a hearing and over two years after she was informed of her expulsion, Plaintiff filed this Complaint in Bibb County Superior Court asserting multiple federal and state-law claims against Defendants.  Defendants then removed the action to this Court.

In her complaint, Plaintiff  alleges retaliation, discrimination, and procedural and substantive due process claims under the U.S. Constitution, actionable through 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that she was expelled from CGTC and mistreated in the classroom in retaliation for exercising her First Amendment rights; that Defendants violated Plaintiff's substantive and procedural due process rights by

8

expelling her without a hearing; and briefly refers to the Equal Protection Clause.

Plaintiff also asserts a breach of contract claim and an "intentional tort" claim under

Georgia state law.  Specifically, Plaintiff contends that she is entitled to recover the

$6,000 educational grant WIA paid to CGTC on her behalf and alleges conversion

because she lost an educational grant based on "abuse of authority by the professor."

Plaintiff also vaguely asserts some sort of RICO claim.  Plaintiff seeks only money

damages and sues the individual defendants in their individual capacities only.

## ANALYSIS

A.      **Subject Matter Jurisdiction and Plaintiff's Motion to Remand**

Plaintiff has filed a Motion to Remand [Doc. 7] in which she asserts that this

Court does not have jurisdiction over the case.  Federal courts are courts of limited

jurisdiction and only have the power to hear cases authorized by the Constitution or by

an Act of Congress.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994).  Therefore a removing defendant must establish the propriety of removal under

28 U.S.C. § 1441 and bears the burden of establishing the existence of federal

jurisdiction.  Leonard v. Enterprise Rent-a-Car, 279 F.3d 967, 972 (11th Cir. 2002).  In

order for removal to be proper under 28 U.S.C. § 1441, the action removed must be one

which originally could have been filed in the district court either because it arose under

the Constitution, treaties, or laws of the United States, i.e., federal question jurisdiction,

or there must be complete diversity of citizenship between the defendants, i.e., diversity jurisdiction.

Here, it is clear Defendants properly removed the case to this Court pursuant to federal question jurisdiction.  Plaintiff's complaint plainly contains causes of action arising under the First and Fourteenth Amendments of the U.S. Constitution.   The fact that Plaintiff also alleges claims under state law does not defeat this Court's jurisdiction. A plaintiff, as "master of the claim," "may avoid federal jurisdiction by *exclusive* reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (emphasis added).  When, however, a plaintiff presents one or more claims that arise under federal law, she subjects herself to the possibility that the defendant will remove the case to federal court.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997). Accordingly, because Plaintiff has presented federal questions, Defendants properly removed the action pursuant to this Court's federal question jurisdiction.  Thus, Plaintiff's Motion to Remand [Doc. 7] is DENIED.

**B.**   **Defendants' Motion to Dismiss**

Defendants have moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6).  As discussed below, the Court finds that Plaintiffs' claims are due to be dismissed.

**Legal Standard to State a Claim for Relief**

In considering dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must accept the allegations set forth in the complaint as true and construe facts in the light most favorable to the plaintiff.  See Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (per curiam).  The Supreme Court, however, has recently clarified that the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face," which requires that the plaintiff "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  This plausibility standard is not a probability requirement but demands "more than a sheer possibility that a defendant has acted unlawfully."  Id.

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. At 1950.  The court is not required to accept the plaintiff's conclusions of law. Id. at 1949.  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." Iqbal, 129 S. Ct. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

Because Plaintiff in this case is proceeding *pro se*, the Court must afford her wide latitude when construing her pleadings and papers. See SEC v. Elliott, 953 F.2d 1560, 1582 (11th Cir. 1992); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). Even so, a *pro se* litigant is not exempt from complying with relevant rules of procedural and substantive law. See Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999). Nor does this latitude given to *pro se* litigants require the Court to re-write a deficient complaint. Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993) (noting lack of any reference in complaint to actual injury and inherent vagueness in pleading terms like "due process" without further elaboration).

**Consideration of Attached Documents**

In evaluating Defendants' Motion to Dismiss, the Court must limit "its consideration to the pleadings and exhibits attached thereto." GSW v. Long County,

Ga., 999 F.2d 1508, 1510 (11th Cir. 1993).  To consider matters outside the pleadings, the Court must convert a motion to dismiss into one for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Here, the Court may consider the additional documents Plaintiff attached to her complaint without converting the Motion into one for summary judgment.  This circuit has adopted the "incorporation by reference" doctrine, under which "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted). "Undisputed" in this context "means that the authenticity of the document is not challenged." Id. (citations omitted).  The Court finds that the documents Plaintiff attached here meet these criteria and may therefore be considered on this Motion to Dismiss.

Having addressed these preliminary matters, the Court now turns to discuss Plaintiff's substantive claims.

**Civil Rights and Tort Claims are Barred by the Statute of Limitations**

Plaintiff's First Amendment retaliation claims and Equal Protection claims, all actionable through 42 U.S.C. § 1983, and her intentional tort claims under Georgia state law, are barred by Georgia's two-year statute of limitations and are thus due to be dismissed. See McNair v. Allen, 515 F.3d 1168, 1173 (2008); O.C.G.A. § 9-3-33.

Section 1983 of the United States Code is the exclusive federal damages remedy for claims alleging a violation of federal or constitutional rights against state actors. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury action in the state where the § 1983 action has been brought." Id. Plaintiff brought her claims in Georgia, where the governing limitations period is two years. O.C.G.A. § 9-3-33; Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006). Although state law determines the applicable two-year statute of limitations period for claims under § 1983, federal law determines the date of accrual. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). Under § 1983, claims accrue when: (1) the plaintiff knows or has reason to know that she was injured, and (2) the plaintiff is aware or should be aware of who inflicted the injury." Id. at 562 (citing Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987)).

State law tort claims against the State are governed by the limitations period set forth in the Georgia Tort Claims Act ("GTCA"). O.C.G.A. § 50-21-27(a)(c). The GTCA

explains that a claim "is forever barred unless it is commenced within two years after the date the loss was or should have been discovered." Id.

Here, the relevant facts attributable to Plaintiff's constitutional retaliation and discrimination claims and her state-law tort claims described in the complaint occurred more than two years before the date Plaintiff filed her complaint. Furthermore, based on Plaintiff's pleadings, it appears that she knew about the about her alleged injuries and the identity of the parties she believes to be responsible for her alleged injuries for more than two years before she filed the complaint. Plaintiff's civil rights and tort claims stem from her expulsion from CGTC. The complaint indicates that she was made aware of her expulsion on September 5 or 6, 2007,[1] when the letter communicating this decision was delivered to her. Any retaliation (whether that allegedly occurring in the classroom or the expulsion decision itself, which Plaintiff asserts also constituted retaliation) or discrimination occurred no later than that same day. Thus, Plaintiff was aware of the purported facts which would support any of her relevant causes of action no later than September 6, 2007.

Plaintiff, however, did not file this action until October 19, 2009 – two years, one month, and 11 or 12 days after her tort and civil rights causes of action accrued. As

---

[1] Plaintiff's complaint asserts that the expulsion occurred on September 5 while her exhibits indicate that it occurred on September 6. The discrepancy does not change the outcome.

such, Plaintiff's § 1983 and state-law tort claims are clearly time-barred by the two-year statute of limitations applicable to those claims.

**Failure to State Substantive and Procedural Due Process Claims**

Plaintiff alleges that Defendants violated both her procedural and substantive due process rights when they expelled her from CGTC without allowing her a hearing pursuant to the Student Recourse Procedure.[2]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State may "[d]eprive any person of life, liberty, or property without due process of law."  U.S. Const. XIV, § 1.  The Supreme Court has interpreted this clause as providing two types of constitutional protections – procedural and substantive due process.  A violation of either may form the basis for a suit under 42 U.S.C. § 1983.   The Court will first address Plaintiff's substantive due process claims.

### Substantive Due Process

Plaintiff makes only a conclusory substantive due process claim in her complaint, failing to identify any substantive rights Defendants could have even violated.  Implicit in Plaintiff's claim, however, is the presumption that a college student's interest in continuing her college education is protected by substantive due process.  Substantive

_____

[2] While these claims are also actionable through § 1983, they are not barred by the statute of limitations since she filed this action within two years of knowing she would not receive a hearing on her expulsion.

due process rights arise from the Constitution and are so fundamental as to be "implicit in the concept of ordered liberty." McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc).  The Supreme Court has recognized only a limited number of substantive due process rights:

> In addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity; and to abortion.

Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (citations omitted).

No court has recognized a substantive property or liberty interest in a college education.  Courts instead have observed that "concerns of federalism, judicial capacity, and academic freedom counsel against the recognition of such an interest." Bell v. Ohio State Univ., 351 F.3d 240, 251 n. 2 (6th Cir. 2003); see Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 226 (1985) (expressing "reluctance to trench on the prerogatives of state and local educational institutions and our responsibility to safeguard their academic freedom, a special concern of the First Amendment.") (citations omitted); Goss v. Lopez, 419 U.S. 565, 579 (1975) (stating that "[t]he Due Process Clause will not shield [a student] from suspensions properly imposed"); Plyler v. Doe, 457 U.S. 202, 221 (1982) (ruling that "[p]ublic education is not a 'right' granted to individuals by the Constitution."); and San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973)

(holding that education is not a fundamental constitutional right).   Thus, Plaintiff has

no substantive due process claim.

Procedural Due Process

Plaintiff also alleges that her dismissal without an opportunity for a hearing

violated her procedural due process rights.  A violation of procedural due process

occurs where the state fails to provide due process in the deprivation of a protected

property or liberty interest.  Id. at 1557.  "In this circuit, a § 1983 claim alleging a denial

of procedural due process requires proof of three elements: (1) a deprivation of a

constitutionally-protected liberty or property interest; (2) state action; and (3)

constitutionally-inadequate process."  Arrington v. Helms, 438 F.3d 1336, 1347-48 (11th

Cir. 2006) (internal quotation marks and citation omitted).  It is not the deprivation of a

protected interest that causes a violation, but rather, "[i]t is the state's failure to provide

adequate procedures to remedy the otherwise procedurally flawed deprivation of a

protected interest that gives rise to a federal procedural due process claim."  McKinney,

20 F.3d at 1557.

Accordingly, only when the state refuses to provide a process sufficient to

remedy the procedural deprivation does a constitutional violation actionable under

1983 arise. Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000).  Consequently, a

plaintiff cannot rely on the failure of the state to provide her due process where

adequate state remedies are available.  Under the rule established in <u>McKinney</u>, "only

when the state refuses to provide a process sufficient to remedy the procedural

deprivation does a constitutional violation actionable under section 1983 arise."

<u>McKinney</u>, 20 F.3d at 1557.  The Eleventh Circuit explains:

> [T]he <u>McKinney</u> rule looks to the existence of an opportunity–to whether
> the state courts, if asked, generally would provide an adequate remedy for
> the procedural deprivation the federal court plaintiff claims to have
> suffered.  If state courts would, then there is no federal due process
> violation regardless of whether the plaintiff has taken advantage of the
> state remedy or attempted to do so.

<u>Horton v. Bd. of County Comm'rs of Flagler County</u>, 202 F.3d 1297, 1300 (11th Cir.

2000).  Thus, if Georgia law provides an adequate means to remedy the alleged

procedural deprivation, Plaintiff's § 1983 procedural due process claim fails.

Here, even if the Court assumes that the appeal procedures offered by CGTC to

Plaintiff were inadequate, Plaintiff fails to state a procedural due process claim because

she did not avail herself of an adequate state procedure – the writ of mandamus – to

remedy any alleged procedural deprivations.  In applying Georgia law, the Eleventh

Circuit has previously held that the writ of mandamus can be an adequate state remedy

to ensure a party was not deprived of her due process rights.  <u>See</u> <u>Cotton</u>, 216 F.3d at

1332; <u>A.A.A. Always Open Bail Bonds, Inc. v. DeKalb County, Ga.</u>, 129 Fed. Appx. 522,

525 (11th Cir. 2005).

Under Georgia law, "when no other specific remedy is available and a party has a clear legal right to have a certain act performed, a party may seek a mandamus." Cotton, 216 F.3d at 1332. "Mandamus is ordinarily considered as a remedy for official inaction." Coastal Services, Inc. v. Jackson, 223 Ga. 238, 239 (1967). "This procedure can be used to compel a governmental body to act in compliance with the law, for instance to require a governmental board to hold a hearing as provided by law." Cochran v. Collins, 253 F. Supp. 2d 1295, 1305 (N.D. Ga. 2003).

Here, mandamus would have been available to Plaintiff because at the time of CGTC's decision, President Natale had refused to exercise any discretion to grant Plaintiff a hearing. Thus, Plaintiff could have filed a petition for mandamus in state court seeking to compel President Natale to exercise his discretion and afford her a hearing. Because the writ of mandamus represents an adequate and available state remedy through which Plaintiff's alleged procedural deprivations could have been corrected, Plaintiff has failed to allege a procedural due process violation.

**Failure to State a RICO claim**

In her complaint, Plaintiff briefly references RICO and indicates a desire to seek the treble damages that can come with a favorable RICO verdict. Plaintiff, however, does not indicate whether she wishes to pursue a claim based on the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") or the Georgia RICO statute.

Regardless, Plaintiff fails to make anything other than conclusory allegations that would indicate that any Defendant engaged in the required predicate acts or prohibited activities necessary to assert a colorable state or federal RICO cause of action. Therefore, Plaintiff's fails to state a claim a RICO claim.

**Failure to State Breach of Contract Claim**

Plaintiff alleges that Defendants breached the "verbal and written" contract she entered into "to accept the grant" under the Workforce Investment Act due to Defendants' "failure to abide by the policies and provisions outlined in the CGTC student handbook." [Doc. 1-2, p. 30-31].  Plaintiff claims that due to Defendants' breach, she is entitled to recover "the educational grant amount of $6000 per academic year set aside the by Workforce Investment Act for the purpose of enrolling and completing the course of study for two years." [Doc. 1-2, p. 29].

Plaintiff's state-law breach of contract claim, however,  is barred by Georgia's sovereign immunity.  As a sovereign entity, the State of Georgia cannot be sued in its courts or in any other court without its consent.  State Bd. of Educ. v. Drury, 263 Ga. 429, 430 (1993).  The State does not waive any immunity with respect to actions brought within the courts of the United States.  Id.  Moreover, Georgia has not waived its sovereign immunity by removing this case to federal court.  By removal, a State may waive its Eleventh Amendment immunity from suit in federal court.  See Lapides v. Bd.

21

of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002).  This consent to litigation in a federal forum does not, however, necessarily entail a waiver of a State's sovereign immunity from suit under its own state laws.  The Supreme Court has explained that the immunity from suit in federal court provided by the Eleventh Amendment is distinct from the broader immunity that States possess as sovereign entities:

> [T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.  Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.

Alden v. Maine, 527 U.S. 706, 713 (1999).  Even if it has consented to suit in a federal forum, Georgia maintains its inherent immunity from suit under its own laws.  Any waiver of this immunity is limited to the express waiver provided in the Georgia Tort Claims Act.  This Court cannot hold Defendants liable under Georgia law when Georgia law precludes Defendants' liability.

The state has waived its sovereign immunity to contract claims only "for the breach of any written contract existing on April 12, 1982, or thereafter *entered into by the state, department and agencies of the state, and state authorities*."  O.C.G.A § 50-21-1(a) (emphasis added).  Plaintiff has produced no written contract to which any state agency

is a party.  Whatever agreements Plaintiff may have had with WIA, Plaintiff is not entitled to enforce them against any Defendant here.

Moreover, Plaintiff has failed to identify any contract she entered into with any of the individual Defendants, must less any such contract that has been breached. Additionally, the only "injury" Plaintiff alleges is the loss of the tuition aid paid by WIA to CGTC.  Thus, Plaintiff has no claim to recover that money.   Accordingly, Plaintiff fails to state a claim for breach of contract under Georgia law.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike [Doc.21] is **DENIED**; Defendants' Motion to Dismiss [Doc. 4] is **GRANTED**, and Plaintiff's case is hereby **DISMISSED**.

**SO ORDERED** this 1st day of March, 2010.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

SSH/thc